# Consolidated Coal Company of St. Louis v. Frank Bokamp.

1. VERDICT—*On Conflicting Evidence.*—In a personal injury suit the court discusses the evidence and holds that while it was conflicting on some of the questions involved, that the facts do not warrant the interference of this court and that the verdict of the jury must stand.

2. COMMON LAW—*When Superseded by Statute on Same Subject.*—The legislature could formulate a complete code of rules so particular and minute in their character as to cover all common law rights with reference to any particular business, and in that event there would be a complete supersedure of the common law; but unless that is done, all common law rights not at variance with some provision of the enactment continue in force.

3. MINES AND MINING—*Common Law as to Negligence of Mine Operator Not Superseded by Statute.*—The court holds that the contention of counsel in this case, that since the passage of the several acts of the legislature regulating the operation of mines, there can be no such thing as negligence at common law in conducting the business, and that whenever a mine operator complies with the statute he is absolved from all charges of negligence, is not well founded, and that the declaration in this case sets out facts and circumstances which constitute a cause of action under the common law.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Macoupin County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this o rt at the November term, 1897. Affirmed. Opinion filed June 3, 1898.

CHARLES W. THOMAS and FRANK W. BURTON, attorneys for appellant.

PEEBLES, KEEFE & PEEBLES, attorneys for appellee.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This suit was commenced by appellee to recover for injuries sustained by him while working as a driver in appellant's coal mine. The mine is located at Gillespie, in Macoupin county. At the time of the injury complained of it had a main entry running north from the bottom of the shaft, from the east wall of which various side entries had been driven. The side entries ran east at right angles with the main entry. The injury took place at the ninth east entry. Appellee had been in the employ of appellant as a driver in this mine for about three years. It was his duty to drive a mule, hauling empty cars from the shaft bottom to the working places and, when loaded, back to the shaft bottom. The ninth east entry was about eight feet wide and six feet high. It extended about a quarter of a mile from the main entry. The coal was being mined from rooms adjoining it by a machine with a capacity of forty-eight boxes a day. Near the east end of the east entry was what was called a "back entry," running in a northeasterly direction from the ninth east entry. At this point there was a switch. In doing his work it was the practice of appellee to couple onto four empty boxes on a switch in the main entry, haul them out that entry to ninth east, thence out ninth east to the back entry, there leave two of them on the west side of the switch while he went on down the entry to the place where the coal was being mined and loaded, exchange the two empties taken with him for two loaded boxes, haul the two loaded ones up to the east side of the switch, stop them, then take his other two empties into the back entry, exchange them for two loaded boxes and bring them out the back entry to the switch. As the mule, pulling the cars, approached the turn at the switch,

Consolidated Coal Co. v. Bokamp.

appellee would step from his seat on the front box, go across to the ninth east track and start the two loaded boxes which he had left standing there. There was a down grade from that point west. After starting the two loads he would follow after the mule, moving slowly with the other two, and the two started would follow him. Some twenty feet from the point where he would start the cars, was a wide place in the entry on the north side of the track. At this point he would pass around to the right of the cars in front of him and mount the seat which he had left when he went to start the other cars. He would then drive down the grade and up the one that was further on. After reaching the top of the second grade he would detach from the two first and return for the two cars started, which he would haul up to the others, couple on and proceed with the four toward the shaft.

Some three or four days before he was hurt he noticed that two cross-beams, supporting a portion of the roof of the ninth east, a short distance west of the switch, and at the wide place mentioned, were cracked and sagged down in the middle. On the Saturday, before he was injured on Tuesday, he claims that he notified his pit boss, C. J. Ramsay, of the dangerous condition of the roof at that place, and that Ramsay promised to have it repaired. On the day that he was injured he had made several trips, finding the ground underneath the sagging cross-beams clear and all right. On the trip when he met his accident he had taken his last two empties into the back entry and returned with two loads. He had started the two loads which had been left to the east side of the switch, and had walked to the wide place. While trying to mount his seat on the front car, as was his wont, his right foot was caught on some slack and top coal, as he contends, which had been precipitated from the defective roof above since the time he passed with the empties, and he was thrown forward and jerked off by the timber which supported one end of the broken cross-beam. He was hurled in front of the first car, which so crushed and mangled him as to paralyze both lower limbs and render the amputation of one of them necessary.

A trial resulted in a verdict and judgment in favor of appellee for five thousand one hundred and fifty dollars.

The negligence charged in one of the two counts of the declaration which the court permitted to stand consisted in allowing certain props, cross-beams and supports, which held the roof of the mine, to became cracked, broken and unsafe, and so to remain after promise to repair, whereby they gave way and precipitated large quantities of coal and slack from the roof which collided with the cars and caused the injury.

The negligence charged in the other count consisted in a failure to furnish appellee a reasonably safe place to work, and in allowing the track and roadway along which he was wont to haul cars to become obstructed with coal, posts, props and other material so near the track as to endanger him in the use of it, and in allowing the supports for the roof of the mine to become broken, whereby coal and slack were precipitated from the roof, thereby causing the injury to appellee.

The testimony adduced in behalf of appellee supports the contention that the injury was caused by the defective condition of the supports for the mine roof whereby coal and other *debris* were cast upon the track. Testimony contradicting appellee and his witnesses and showing that he was injured at a point some fifty feet from the defective roof supports was heard in behalf of appellant. There was a sharp conflict, not only as to the particular place of the injury, but as to whether the supports were defective, whether appellant had notice of any defect and whether the mine manager promised to repair. Those were questions, of course, which came within the peculiar province of the jury for determination. We would not feel justified in disturbing the conclusions reached by them on those questions unless we could plainly see that they were actuated by passion and prejudice, or had not comprehended the facts. Close as the case was on the facts in dispute, the jury could have rendered a verdict either way and received the sanction of the court.

It is contended that appellee was not entitled to recover because at the time of receiving the injury he was not in the exercise of ordinary care for his own safety.   To start the two loaded cars down the declivity from the back entry switch and then walk between them and the cars being hauled by the mule until he reached the wide place where he was accustomed to mount the car next to the mule would not appear to be very safe; and had appellee met his injury by falling over coal which had been precipitated from the roof, so that the cars in the rear overtook and ran over him, there would be much force in appellant's contention.   But the testimony of appellee shows that he met his injury after he had gone from between the cars, while he was in the act of mounting the car next to the mule, and by reason of his foot becoming entangled in the *debris* which had fallen from the roof.   We do not think that the mounting of the car while it was being slowly moved by the mule can be regarded as unsafe.   Indeed, the entire method used by appellee seems to have been the one used by his predecessor and the one which he says the pit boss directed him to follow.   Although in use for several years, this is the first instance in which it had been marked by an accident.

The declaration in this case sets out facts and circumstances which constitute a cause of action at common law.   The proofs offered by appellee support it.   It is vigorously contended by counsel for appellant, however, that since the passage of the several acts of the legislature regulating the operation of mines, there can be no such thing as negligence at common law in conducting the business, and that whenever a mine operator complies with the statute he is absolved from all charges of negligence.   In other words, the contention is that the various statutory enactments now in force have supplanted the common law as to negligence in the conduct of mines in Illinois.

Common law rights are frequently made the subject of statutory enactment.   When that occurs it frequently becomes an interesting question whether the common law right has been superseded, and the determination of that

depends usually upon whether the statute is at variance with the common law or is merely cumulative. The legislature could formulate a complete code of rules so particular and minute in their character as to cover all common law rights with reference to any particular business, and in that event there would be a complete supersedure.

But unless that is done, all common law rights not at variance with some provision of the enactment would continue in force.

We see no just ground for complaint against the first instruction offered for the plaintiff. The chief objection urged to it is that it departs from the pleadings. We do not so understand it.

Nor is the instruction bad for the reason that it bases appellant's liability upon a failure to repair the defect within a reasonable time after receiving notice of it, instead of within a reasonable time after promising to repair. If the jury believed that appellee notified Ramsey of the defect and the latter promised to repair, which they evidently did, it mattered not whether the instruction said within a reasonable time after the notice or within a reasonable time after a promise to repair, for the reason that the notice was given and the promise made at the same time.

Appellant has no just reason to complain of the refusal of, or the modification of instructions offered by it. Every aspect of the case was covered by instructions given for appellant, and in as favorable a light, certainly, as the law permits.

Judgment affirmed.